IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRENDA LANTZ, | : | |
| | : | Civ. No. 1:16-CV-0224 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| WAYNESBORO AREA SCHOOL | : | |
| DISTRICT, DR. SHERIAN DILLER, | : | |
| DR. WENDY ROYER, and DR. | : | |
| DIANE MCCALLUM, | : | |
| | : | Judge Sylvia H. Rambo |
| Defendants. | : | |

# M E M O R A N D U M

In this civil action, Plaintiff brings, *inter alia*, sex discrimination and retaliation claims against her former employer and supervisors under Title VII and the Pennsylvania Human Relations Act. Presently before the court is Defendants' motion to dismiss the complaint (Doc. 5), which challenges whether Plaintiff sufficiently pleaded a cause of action. For the reasons that follow, Defendants' motion will be granted in part and denied in part.

## I.      Background

For purposes of disposition of the instant motion to dismiss, the court has carefully reviewed the complaint and exhibits attached thereto, and will, as required when deciding a motion to dismiss, accept as true all well-pleaded factual allegations and view them in the light most favorable to Plaintiff.

### A.   Facts

Plaintiff Brenda Lantz ("Plaintiff") obtained a college degree in teaching with a plan to pursue a non-teaching career path in education. (Doc. 1, ¶ 1.) Following college, she received a master's degree in counseling and, up until 2014, had been employed as a school counselor for Defendant Waynesboro Area School District ("the District") for the entirety of her professional life. (Doc. 1, ¶¶ 4, 15-16.)

On January 31, 2014, Defendants Dr. Wendy Royer ("Royer"), the assistant superintendent of the District, and Diane McCallum ("McCallum"), an assistant principle at the District high school, notified Plaintiff that at the beginning of the 2014 academic year, she would be transferred to a new position as an English teacher at the high school. (*Id.* at ¶¶ 7, 8, 21.) At that time, Plaintiff had sixteen years of experience as a counselor in the District with a perfect performance record and had served for two years as chair of the counseling department. (*Id.* at ¶ 21.) She had no teaching experience. (*Id.* at ¶ 22.) Royer informed Plaintiff that she was being replaced by a male former English teacher with no experience as a counselor and only a recent counseling certification. (*Id.* at ¶ 24.) Plaintiff protested that her reassignment violated her contractual rights under a collective bargaining agreement that protected her from any such reassignment and, further, that the reassignment was motivated by the District superintendent Dr.

Sherian Diller's ("Diller") desire to place a male in the high school counseling office. (*Id.* at ¶ 25.) Royer did not deny that the gender of Plaintiff's replacement impacted the decision, stating instead, "Well, you know what? If it happens to work out that way." (*Id.* at ¶ 27.) In fact, Royer told at least two other District employees that Diller wanted a male counselor at the high school. (*Id.* at ¶ 28.) Plaintiff alleges that the decision to replace her with a male counselor was made by Diller, but the decision as to which male was delegated to McCallum and Royer, subject to Dr. Diller's final approval.

On February 10, 2014, as a result of her reassignment, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the Pennsylvania Human Relations Commission ("PHRC"). (*Id.* at ¶ 32.) On May 13, 2014 and July 24, 2014, respectively, the District was notified and served with the charge. (*Id.* at ¶ 33.)

According to the complaint, after the District was notified of Plaintiff's EEOC charge of discrimination, Royer, Diller, and McCallum began engaging in a pattern of retaliation against her. For example, during the summer of 2014, they directed Plaintiff to draft a curriculum incorporating technology and group work for the class she would begin teaching in the fall. (*Id.* at ¶ 34a.) After several consultations, Royer, Diller and McCallum approved Plaintiff's proposed curriculum as presented, including the accompanying required technology. (*Id.* at ¶

34b.) However, in August 2014, after the District and the individual defendants were served with the charge, Plaintiff discovered that the necessary group tables and laptop computers, which were essential to her curriculum, had not been provided to her classroom. (*Id.* at ¶ 34c.) Plaintiff sent several emails to McCallum and the high school principal regarding the missing tables and computers, but no such equipment was provided until Plaintiff obtained tables directly from a school custodian. (*Id.* at ¶ 34d-e.) During the second week of school, Plaintiff received several obsolete computers that were inadequate for her curriculum. (*Id.* at ¶ 34g.) As of November 30, 2014, Plaintiff had still not received any functioning laptops, which severely interfered with her ability to deliver the educational goals set forth in her curriculum. (*Id.* at ¶ 34i.) In addition to these issues, Plaintiff was also assigned an "inordinately heavy teaching load compared to all other English teachers at [the high school]." (*Id.* at ¶ 34j.)

On September 4, 2014, Plaintiff emailed the high school principal stating that she felt the district was "setting [her] up to fail" by telling her to create a course with technology and group work and then not providing her with the appropriate equipment (*Id.* at ¶ 35.) Between September and November 2014, Plaintiff took medical leave after her physician ordered her to stop working "due to the deterioration of her health from the retaliatory conduct by [ ] Diller and Royer." (*Id.* at ¶¶ 36-37.) Thereafter, Plaintiff was on medical leave. (*Id.* at ¶ 37.) On

October 5, 2014, Plaintiff sent a "very detailed" letter to Diller, copying all District school board members and the EEOC, outlining Diller's discriminatory and retaliatory conduct against her and requesting that it stop. (*Id.* at ¶ 38.) After no remedial action was taken and because Plaintiff believed that "she was being sabotaged in retaliation for her EEOC charge," Plaintiff resigned from her employment with the District on November 7, 2014, to be effective November 28, 2014. (*Id.* at ¶ 39.) In her resignation letter to Diller, Plaintiff stated that she was resigning because of the discriminatory and retaliatory conduct she was experiencing. (*Id.* at ¶ 40.) On November 21, 2014, Diller ordered Plaintiff to be excluded from all District property and terminated Plaintiff's email account. (*Id.* at ¶ 41.) The EEOC issued Plaintiff a notice of a right to sue on November 12, 2015. (*Id.* at ¶ 3.)

### B.    <u>Procedural History</u>

Plaintiff initiated this action by filing a complaint on February 9, 2016. (Doc. 1.) In her complaint, Plaintiff asserts that the District, aided and abetted by Diller, Royer, and McCallum (collectively "Defendants"), violated Title VII of the Civil Rights Act of 1964 and 1991, 42 U.S.C. § 2000e-2, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Con. Stat. § 951, by unlawfully discriminating against her on the basis of sex when they reassigned her to a teaching position in order to replace her with a male guidance counselor and

subsequently retaliated against her for the filing of her EEOC charge. (*Id.* at Counts I-V.) Plaintiff also asserts that Defendants violated 42 U.S.C. § 1983 ("Section 1983") when they deprived her of "her constitutionally protected right to security in a tenured public employment position" without due process and/or in retaliation for engaging in constitutionally protected conduct by reassigning and constructively discharging her. (*Id.* at Count VI.) Finally, Plaintiff asserts a punitive damages claim under Title VII and Section 1983 wherein she alleges that the individual defendants "acted willfully, wantonly, recklessly and with outrageous disregard and indifference" to Plaintiff's constitutional rights. (*Id.* at ¶¶ 72-77.)

On April 11, 2016, Defendants filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted (Doc. 5), and a brief in support (Doc. 6). On April 22, 2016, Plaintiff filed her opposition to Defendants' motion to dismiss (Doc. 7), and Defendants replied on May 6, 2016 (Doc. 8). Thus, the motion has been fully briefed and is ripe for disposition.

## II.      **Legal Standard**

Defendants move to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For purposes of a motion to dismiss, Rule 12(b)(6) works in conjunction with Federal Rule of Civil Procedure 8, which requires that a complaint set forth "a short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's short and plain statement of the claim must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Further, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (internal citations omitted) (citing *Twombly*, 550 U.S. at 555, 557). However, this "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *W. Penn Allegheny Health Sys. Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (quoting *Phillips*, 515 F.3d at 234). When conducting

this inquiry, the court considers "only the allegations in the complaint, exhibits attached to the complaint[,] and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993)).

## III.   Discussion

In its motion to dismiss, Defendants argue that Plaintiff failed to state a claim as to each count of the complaint. The court will address each of Defendants' arguments in turn.

### A.   Title VII and PHRA Discrimination Claims

Defendants first contend that Plaintiff has not suffered an adverse employment action and cannot establish a prima facie case of gender discrimination under either Title VII or the PHRA. Because the analysis and legal principles for Title VII claims are the same for claims under the PHRA, the court will address these arguments together. *See Burton v. Heckmann Water Res.*, Civ. No. 13-cv-0880, 2015 WL 1427971, *8 n.3 (M.D. Pa. Mar. 27, 2015) (citing *Daniels v. Sch. Dist. of Phila.*, 982 F. Supp. 2d 462, 479 (E.D. Pa. 2013)).

Under Title VII, it is unlawful "for any employer to fail or refuse to hire or to discharge any individual, otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C.

§ 2000e-2(a)(1). In order to establish a *prima facie* case of sex discrimination under Title VII, a plaintiff must show by a preponderance of the evidence that "(1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Samuels v. Postmaster Gen.*, 257 F. App'x 585, 586 (3d Cir. 2007) (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999)). Here, Defendants do not dispute that Plaintiff is a member of a protected class based on her sex, that she was qualified for the position in question, or that the events in question give rise to an inference of discrimination. (Doc. 6, p. 5.) Rather, Defendants argue that Plaintiff did not suffer an adverse employment action when she was transferred from her position as a guidance counselor to an English teacher because she did not suffer a loss in pay, status, or benefits. (*Id.* at pp. 11-13.) In response, Plaintiff argues that her transfer constitutes an adverse employment action regardless of the pecuniary effect because she was transferred to an undesirable position without administrative support and faced a significant change in working conditions. (Doc. 7, pp. 5-8.)

The Third Circuit has held that a *prima facie* case of discrimination cannot be established on a "one-size-fits-all basis" and instead depends on the facts of the particular case. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 411-12 (3d Cir.

1999). Generally, an employment action "must be 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *Tourellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)). "[E]mployment actions such as lateral transfers and changes of title or reporting relationships have [ ] been held not to constitute adverse employment actions." *Id.* (citations omitted). However, a reassignment can become an adverse employment action under Title VII if the plaintiff can show a detrimental impact. *Love v. United Parcel Serv.*, Civ. No. 204-cv-964, 2006 WL 2806565, *3 (W.D. Pa. Sept. 28, 2006). A "reassignment with significantly different responsibilities," *Greer v. Mondelez Global, Inc.*, 590 F. App'x 170, 173 (3d Cir. 2014) (citing *Burlington Indus., Inc.*, 524 U.S. at 749), and "actions that reduce opportunities for promotion or professional growth can constitute adverse employment actions." *Walker v. Centocor Ortho Biotech, Inc.*, 558 F. App'x 216, 219 (3d Cir. 2014) (citations omitted).

Here, as a result of her reassignment, Plaintiff lost her position as a guidance counselor and was placed in what she regarded as a less desirable position teaching English. In her new capacity, she faced significantly different job responsibilities and a loss of future opportunities for professional growth in the position she had pursued for the entirety of her career. Viewing the facts in the

light most favorable to Plaintiff, they suffice to demonstrate that she was subjected to a sufficient adverse employment action such that her Title VII and PHRA claims should survive this stage of the litigation. *See Gross v. Akill*, Civ. No. 13-cv-3373, 2013 WL 5825431, *9 (E.D. Pa. Oct. 30, 2013) (alteration in original omitted) (quoting *Salvato v. Smith*, Civ. No. 13-cv-2112, 2013 WL 3431214, *8 (E.D. Pa. July 9, 2013)) ("[A]t the motion to dismiss stage of litigation[,] . . . if even one of the [alleged] actions rises to the level of adverse employment action, Plaintiff's case must survive."). Accordingly, the court finds that Plaintiff pleaded sufficient facts to support a claim for relief under Title VII and the PHRA, and Counts I and III will not be dismissed.

## B.       Title VII and PHRA Retaliation Claims

In moving to dismiss Plaintiff's retaliation claims, Defendants argue that Plaintiff did not raise these claims before the EEOC and therefore failed to exhaust her administrative remedies. (Doc. 6, p. 13.) Plaintiff argues in response that her retaliation claims should reasonably be expected to grow out of the discrimination charge, which is the subject of the EEOC investigation. (Doc. 7, pp. 9-10.)

Title VII requires that a plaintiff exhaust his or her administrative remedies by complying with certain procedural requirements prior to filing suit in federal court. *See* 42 U.S.C. § 2000e-5. Relevant to the matter *sub judice*, a plaintiff may only bring a Title VII action after filing an administrative charge with

the EEOC. *Id.* The agency will then investigate the charge, and the plaintiff must wait until the EEOC issues a "right to sue" letter before she can initiate a private action. *See id.*; *Barzanty v. Verizon Pa., Inc.*, 361 F. App'x 411, 413 (3d Cir. 2010) (citing *Burgh v. Borough Council*, 251 F.3d 465, 470 (3d Cir. 2001)). "The ensuing suit is limited to claims that are within the scope of the initial administrative charge." *Twillie v. Erie Sch. Dist.*, 575 F. App'x 28, 31 (3d Cir. 2014) (citing *Antol v. Perry*, 82 F.3d 1291, 1295-96 (3d Cir. 2009)). Claims are within the scope of the original charge if "they arise during the pendency of the EEOC investigation, are closely related to conduct alleged in the charge, or are explanations of the original charge." *Waiters v. Parsons*, 729 F.2d 233, 234 (3d Cir. 1984). Where the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally arise from the EEOC investigation, they are procedurally barred for failure to exhaust the available administrative remedies. *See Jones v. Calvert Grp.*, 551 F.3d 297, 300 (4th Cir. 2009) ("[A] claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex."). "Where discriminatory actions continue after the filing of the EEOC complaint, however, the purposes of the statutory scheme are not furthered by requiring the victim to file additional EEOC complaints." *Waiters*, 729 F.2d at 237.

The question presented herein is whether Plaintiff's claim of retaliation for the filing of her EEOC charge are reasonably related to the allegations of discrimination set forth in her charge and can be brought now on that basis. Several circuits to consider this issue have determined that a plaintiff may raise such a retaliation claim for the first time in federal court, and this court finds those decisions persuasive. *See, e.g.*, *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992); *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir. 1989); *Brown v. Hartshorne Public Sch. Dist. No. 1*, 864 F.2d 680, 682 (10th Cir. 1988); *Kirkland v. Buffalo Bd. of Educ.*, 622 F.2d 1066, 1068 (2d Cir. 1980). As noted above, the "parameters of a civil action in the District Court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of the proceedings before the Commission." *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 94 (3d Cir. 1999). A claim alleging retaliation by an employer against an employee for filing an EEOC charge is reasonably related to the initial charge of discrimination. As the Second Circuit has explained:

> In such cases the EEOC charge requirement is not excused because the new claims likely would have been discovered by the EEOC investigation. While this is possible, it is equally possible that the retaliation would come after the EEOC investigation was completed. Rather, in such situations, we have related the exhaustion requirement based on the close connection of the retaliatory act to both the initial discriminatory conduct and the filing of the charge itself. The

> EEOC already will have had the opportunity to investigate and
> mediate the claims arising from the underlying discriminatory
> acts alleged. Due to the very nature of retaliation, the principle
> benefits of EEOC involvement, mediation of claims and
> conciliation, are much less likely to result from a second
> investigation. Indeed, requiring a plaintiff to file a second
> EEOC charge under these circumstances could have the
> perverse result of promoting employer retaliation in order to
> impose further costs on plaintiffs and delay the filing of civil
> actions relating to the underlying acts of discrimination.

*Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402 (2d

Cir. 1993) (citations omitted). Furthermore, "a plaintiff that has already been

retaliated against one time for filing an EEOC charge will naturally be reluctant" to

file a separate or amended charge, possibly bringing about further retaliation.

*Jones*, 551 F.3d at 302 (citing *Malhotra*, 885 F.2d at 1312).

In this case, Plaintiff dual filed an EEOC and PHRC charge of

discrimination alleging that Defendants discriminated against her on the basis of

her gender, and in the instant suit, she alleges that her filing of the charge prompted

Defendants to retaliate against her. The investigation of Plaintiff's administrative

complaint was still ongoing when the events underlying her retaliation claim,

which reasonably relate to the underlying charge, occurred. Accordingly, at this

stage of the litigation, based on the limited record before the court, and construing

all allegations in the complaint in the light most favorable to Plaintiff, the court

will deny Defendant's motion insofar as it seeks to dismiss Plaintiff's claims of

retaliation for failure to exhaust administrative remedies.

### C.    **Aiding and Abetting Claims**

Defendants next argue that Plaintiff's claims against the individual defendants for aiding and abetting should be dismissed for failure to set forth a plausible claim for relief. The PHRA makes it illegal for "any person . . . to aid, abet, incite, compel, or coerce the doing of any . . . unlawful discriminatory practice . . . or to attempt, directly or indirectly, to commit any unlawful discriminatory practice." *Hollinghead v. City of York*, 912 F. Supp. 2d 209, 223 (M.D. Pa. 2012) (quoting 43 Pa. Stat. Ann. § 955(e)). Under the aiding and abetting provision of the PHRA, a plaintiff "may advance . . . liability claims against [persons] who bear responsibility for implementing an allegedly unlawful discriminatory practice." *Id.* (quoting *D'Altilio v. Dover Twp.*, Civ. No. 06-cv-1931, 2009 WL 2948524, *12 (M.D. Pa. Sept. 14, 2009)). "[L]iability under § 955(e) only extends to those who are in a *supervisory* role because 'only supervisors can share the discriminatory purpose and intent of the employer that is required for aiding and abetting.'" *Brzozowski v. Pa. Tpk. Comm'n*, __ F. Supp. 3d __, 2016 WL 758329, *7 (E.D. Pa. 2016) (quoting *Holocheck v. Luzerne Cty. Head Start, Inc.*, 385 F. Supp. 2d 491, 497 (M.D. Pa. 2005)).

Here, Plaintiff alleges that the individual defendants, Diller, Royer, and McCallum, held supervisory positions and that they acted with the purpose and intent to discriminate against her because of her gender. At this initial stage of the

litigation, the court finds these facts sufficient to state a claim for relief under 43

Pa. Cons. Stat. § 955(e), and therefore Count V will not be dismissed.

### D.        Section 1983 Claims

Defendants further argue that Plaintiff's Section 1983 claims should be

dismissed for failure to plead sufficient facts to satisfy each claim. Section 1983 of

Title 42 of the United State Code offers private citizens a means to redress

violations of federal law committed by state officials. *See* 42 U.S.C. § 1983. In

pertinent part, the statute provides as follows:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected,  any
> citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress.

*Id.*  "Section 1983 is not a source of substantive rights, but merely a method to

vindicate violations of federal law committed by state actors."  *Pappas v. City of*

*Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v.*

*Doe*, 536 U.S. 273, 284-85 (2002)).  To establish a claim under this section, a

plaintiff must demonstrate that: (1) the conduct complained of was committed by

persons acting under color of state law; and (2) the conduct violated a right,

privilege, or immunity secured by the Constitution or laws of the United States.

*Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

      **a.**      Procedural Due Process Claims

      The Fourteenth Amendment's due process clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To establish a procedural due process claim, a plaintiff must allege that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 117 (3d Cir. 2000)).

      Defendants contend that Plaintiff failed to state a procedural due process claim because Plaintiff's right to public employment as a guidance counselor is not a protected property interest, and further, because Plaintiff cannot establish that she was constructively discharged. (Doc. 8, pp. 10-12.) Plaintiff argues in response that she had a property right to her specific position as a tenured guidance counselor which was deprived by virtue of her reassignment and that Defendants deprived her of her right to continued public employment by constructively discharging her. (Doc. 7, pp. 13-14.)

Initially, the court declines to hold that the change in Plaintiff's work assignment was a deprivation of her property rights actionable under Section 1983. As the Third Circuit has explained,

> If we considered that a mere change in work assignment deprived an employee of a property interest, as a practical matter we would be federalizing routine employment decisions. Additionally, under the guise of protecting employees' rights, we would be erecting a barrier to ordinary management determinations regarding the assignment and duties of employees.

*Ferraro v. City of Long Branch*, 23 F.3d 803, 806 (3d Cir. 1994). In essence, "personnel decisions short of termination do not constitute a deprivation of a property interest under the due process clause." *Id.* (citing *Wargat v. Long*, 590 F. Supp. 1213, 1215 (D. Conn. 1984).

As a tenured professional employee in education, however, Plaintiff did retain a property right to continued public employment. *Andresky v. W. Allegheny Sch. Dist.*, 437 A.2d 1075, 1077-78 (Pa. Commw. 1981) (citing 24 P.S. §§ 11-1122, 11-1124)). While Defendants do not dispute that Plaintiff held such a property right, they argue that Plaintiff failed to adequately allege that she was constructively discharged from her employment. To establish a constructive discharge claim, a plaintiff must show that her "employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157,

169–70 (3d Cir. 2013) (quoting *Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1084 (3d Cir.1996)). An "employee's subjective perceptions of unfairness or harshness do not govern a claim of constructive discharge;" rather, courts must employ an objective test *Id.* (quoting *Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1083 (3d Cir.1992)). Factors relevant to the determination include threats of termination or suggested resignation, demotions, reductions in pay and benefits, transfer to less desirable positions, alteration of job responsibilities, or poor performance evaluations. *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 502-03 (3d Cir. 2010).

Plaintiff asserts that she resigned after Defendants transferred her to a less desirable position, significantly altered her job responsibilities, assigned her an "inordinately heavy teaching load" and intentionally withheld critical teaching tools. Based on these allegations, the court finds that Plaintiff alleged sufficient facts to support her claim that Defendants knowingly permitted conditions of discrimination so intolerable that a reasonable person would resign. Accordingly, the court will not dismiss Plaintiff's procedural due process claim.

b.      *Monell* Claims

Defendants further argue that Plaintiff failed to adequately plead a policy or practice to support a municipal liability claim, otherwise known as a *Monell* claim. (Doc. 6, pp. 20-21.) A municipality may be found liable under Section 1983

"where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694-95 (1978)).   To properly assert a claim for municipal liability under *Monell*, a plaintiff "must demonstrate that the violation of [her] rights was caused by the municipality's policy or custom." *Thomas v. Cumberland Cty.*, 749 F. 3d 217, 222 (3d Cir. 2014) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). If the "policy or custom … violates the Constitution or [if] the policy or custom, while not unconstitutional itself, is the moving force behind the constitutional tort of one of its employees," the municipality will be found liable. *Id.* (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991)). A policy exists "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Phila.,* 895 F.2d 1469, 1480 (3d Cir.1990) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481 (1986)). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." *Id.* at 1481 (quoting *Monell,* 436 U.S. at 690). "Municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *McGreevy v. Stroup,* 413 F.3d 359, 368 (3d Cir. 2005) (quoting *Pembaur*, 475 U.S. at 480).

Here, Plaintiff alleges that Diller, Royer, and McCallum, as "high policy making official[s]," established and acted upon an official District policy to hire "a male school counselor at the high school," and that, as a result of that policy, Plaintiff was reassigned and later constructively discharged from her position. (Doc. 1, ¶¶ 25, 28-30, 74.) However, the complaint fails to plausibly allege any facts to show that these defendants had final policy making authority. Indeed, the court is unaware of any precedent for finding that a vice principal of a single school can be a policymaker for an entire school district. *See Phila. Fed'n of Teachers v. Sch. Dist. of Phila.*, Civ. No. 97-cv-4168, 1998 WL 196403, *11 (E.D. Pa. Apr. 23, 1998). Further, there is no indication that the school board delegated any final decision making authority to the district's assistant superintendents. *See* 24 P.S. § 10-1082 (providing that assistant district superintendents may perform only those duties assigned to them by the school board or the superintendent). While it is plausible that a superintendent may carry such final authority, the complaint lacks any facts to show that the school board in fact delegated such authority to the superintendent for matters involving assignment and transfers. Accordingly, the court finds that Plaintiff has failed to properly plead a *Monell* claim, and Defendants' motion will be granted in this respect.

c.        Personal Capacity Claims

Finally, Defendants argue that Plaintiff's Section 1983 claims against the individual defendants in their personal capacities should be dismissed because Plaintiff failed to establish a violation of a constitutional right. Personal capacity actions "seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). To be held personally liable, "[an individual government defendant] in a civil rights action must have personal involvement in the alleged wrongdoing," which can be "shown through allegations of personal direction or of actual knowledge and acquiescence." *Blizzard v. Commander, Del. State Police Troop Nine*, 725 F. Supp. 2d 469, 473 (D. Del. 2010) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). As the court has already addressed, Plaintiff has sufficiently alleged a violation of her constitutional right to tenured employment. She has also adequately alleged that the individual defendants personally acted to deprive Plaintiff of that right. As such, the court finds that, at this stage of the litigation and viewing the facts in the light most favorable to Plaintiff, Plaintiff has adequately pleaded personal capacity claims against Diller, Royer, and McCallum under Section 1983, and therefore, those claims will not be dismissed.[1]

---

[1] Defendants also contend that Plaintiff is not entitled to punitive damages because she failed to plead sufficient facts to support her claims under Title VII and Section 1983. Because the court

**IV.**	**Conclusion**

Based on the foregoing discussion, the court finds that Plaintiff failed to plead sufficient facts to support a *Monell* claim. Accordingly, the court will dismiss Count VII without prejudice and will grant Plaintiff leave to amend her complaint to provide her with an opportunity to submit an adequate pleading. The court finds that Plaintiff has alleged sufficient facts, however, to support her remaining claims, and therefore, the balance of the complaint will not be dismissed.

An appropriate order will issue.

  s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: October 14, 2016

---

finds that Plaintiff has stated plausible claims for relief under those statutes, Plaintiff's punitive damages claim also survives Defendant's motion to dismiss.